(C. D. 1443)

FLOWER CENTER, INC. \
S. STERN, HENRY & Co. } *v.* UNITED STATES

## United States Customs Court, First Division

(Decided July 7, 1952)

Brooks & Brooks (Thomas J. McKenna of counsel) for the plaintiffs.

Charles J. Wagner, Acting Assistant Attorney General (Joseph E. Weil and Richard E. FitzGibbon, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoice as "feather heathers for hat trims" and as "feather heathers for hat trimmings." According to the collector's letter of transmittal accompanying the protest, it was classified as artificial flowers in chief value of feathers at the rate of 60 per centum ad valorem under the provisions of paragraph 1518 of the Tariff Act of 1930, as amended by the Presidential proclamation reported in T. D. 51898.

The claims made in the protest or by amendment thereof are for duty at the rate of 20 per centum ad valorem under the provision in said paragraph 1518, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for—

Feathers * * *:

   *       *       *       *       *       *       *

    Dressed, colored, or otherwise advanced or manufactured in any manner, * * *

or for—

   * * * all articles not specially provided for, composed wholly or in chief value of any of the feathers respecting which a rate of duty is specified in paragraph 1518, Tariff Act of 1930.

or, alternatively, at the rate of 45 per centum ad valorem under the provisions of said paragraph 1518, as modified by the said General Agreement on Tariffs and Trade, T. D. 51802, as made effective April 21, 1948, by the Presidential proclamation published in T. D. 51898, for "Artificial * * * flowers" when not specially provided for and composed wholly or in chief value of materials other than yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile.

At the trial of the issue counsel for the plaintiffs offered in evidence two samples of the merchandise which were received in evidence as plaintiffs' collective exhibit 1 and were stipulated to be representative of the above-described items on the invoice, which are numbered 5504 and 5000. It was also stipulated that the articles in question were withdrawn from warehouse on June 7, 1948; that the merchandise

involved consists of artificial flowers in chief value of feathers; and that the feathers which constitute the component material of chief value of the imported items are feathers respecting which a rate of duty is specified in paragraph 1518. Upon such record, the protest was submitted for decision, time being allowed for the filing of briefs.

It is apparent from the record facts that the merchandise here involved was entered for warehouse upon its arrival in the United States, and was withdrawn therefrom on June 7, 1948. The rate of duty applicable thereto, and the classification status thereof, must be determined as of that day. Section 557, Tariff Act of 1930, T. D. 51802, and T. D. 51898, *supra*. It is also apparent that the merchandise consists of articles *made from* feathers, to wit, artificial flowers, and are something more than "Feathers * * * Dressed, colored, or otherwise advanced or manufactured in any manner." Plaintiffs' contention under the first concession specified under paragraph 1518 in the General Agreement on Tariffs and Trade, *supra*, is therefore untenable.

As originally enacted, paragraph 1518 made provision for two classes of artificial flowers. A duty of 90 per centum ad valorem was imposed upon those composed—

* * * wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile * * *

while upon those composed—

* * * wholly or in chief value of other materials and not specially provided for * * *

a duty of 60 per centum ad valorem was imposed.

It will be noted that although the rate of duty applicable to artificial flowers was dependent upon the *composition* of the flowers, the tariff designation was not one by composition, but *by name*, i. e., artificial flowers. This distinction is important and must be borne in mind.

Paragraph 1518, as originally enacted, also contained a provision reading as follows:

* * * boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the feathers, flowers, leaves, or other material above mentioned, shall be subject to the rate of duty provided in this paragraph for such materials, but not less than 60 per centum ad valorem: * * *.

The rate of duty applicable to certain of the articles covered by the last-quoted provision was reduced by the modification thereof contained in the trade agreement with the United Kingdom reported in T. D. 49753, but this fact is of no moment here as the proclamation of the said trade agreement by the President was terminated as of December 31, 1947, by the Presidential proclamation reported in T. D. 51811.

In part I of schedule XX of the General Agreement on Tariffs and Trade, T. D. 51802, the following concessions as to the rates of duty applicable to artificial flowers were provided:

| Tariff Act of 1930, paragraph | Description of articles | Rate of Duty |
|---|---|---|
| 1518 | Artificial * * * flowers, * * *: | |
| | When composed wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile. | 60% ad val. |
| | When composed wholly or in chief value of other materials and not specially provided for: Artificial flowers composed wholly or in chief value of feathers. | 30% ad val. |
| | Other_____ | 45% ad val. |

In the structure of the concessions enumerated in part I of schedule XX of the said General Agreement on Tariffs and Trade, the foregoing constituted the fourth concession under paragraph 1518. The fifth concession under the said paragraph 1518 read as follows:

Boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the feathers respecting which a rate of duty is specified in paragraph 1518, Tariff Act of 1930_____20% ad val.

In the eighth recital of the proclamation of the President, dated December 16, 1947, published in T. D. 51802, in connection with the said General Agreement on Tariffs and Trade, the President of the United States determined, in accordance with article XXVII of the said general agreement, that, among other things, the concessions provided for in the fourth concession under paragraph 1518 in part I of schedule XX of the said agreement should not be applied so long as they were identified in a list set forth in the said eighth recital in the said proclamation. No such identification was made as to the fifth concession quoted above.

The effect of this, as applied to the tariff provisions with which we are here concerned, was that as of January 1, 1948, the rates of duty applicable to artificial flowers were those specified in paragraph 1518, without modification by the General Agreement on Tariffs and Trade, i. e., 90 per centum ad valorem if composed wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, and 60 per centum if composed wholly or in chief value of other materials and not specially provided for. The rate applicable to—

Boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the feathers respecting which a rate of duty is specified in paragraph 1518, Tariff Act of 1930,

was 20 per centum ad valorem, in accordance with the modification of paragraph 1518 contained in the said agreement.

Before proceeding further, we think the situation will be clearer if we consider at this point the classification status of the merchandise here involved had it been imported or withdrawn from warehouse on January 1, 1948. By stipulation of counsel, the merchandise is determined as matter of fact to be artificial flowers in chief value of feathers, as to which feathers a rate of duty is specified in paragraph 1518. It would, therefore, fall within the tariff provision in paragraph 1518, as unmodified, for—

* * * artificial * * * flowers * * * when composed wholly or in chief value of other materials [than yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile],

taking duty at 60 per centum ad valorem. It would also fall within the tariff provision in paragraph 1518, as modified by the General Agreement on Tariffs and Trade, for—

* * * all articles not specially provided for, composed wholly or in chief value of any of the feathers respecting which a rate of duty is specified in paragraph 1518, Tariff Act of 1930,

taking duty at 20 per centum ad valorem. In other words, the imported artificial flowers would be embraced within both tariff provisions, and the question for determination, no manifestation of legislative intent being apparent, would be which was the more specific or definite provision. *Knauth, Nachod & Kuhne* v. *United States*, 4 Ct. Cust. Appls. 58, T. D. 33307. Of course, if both provisions were equally specific, then the so-called "highest rate" rule provided for in the last sentence of paragraph 1559 would take effect. *Lorsch & Co.* v. *United States*, 13 Ct. Cust. Appls. 172, T. D. 41036.

Both provisions, it will be observed, contain the modifying phrase "not specially provided for," and under the well-settled rule in such cases, its presence is to be disregarded. *United States* v. *S. S. Perry*, 25 C. C. P. A. (Customs) 282, T. D. 49395, and cases therein cited.

The provision for artificial flowers, however, is a denominative or *eo nomine* one, in that it refers to a class of articles by name, while the provision for "all articles * * * composed wholly or in chief value of any of the feathers respecting which a rate of duty is specified in paragraph 1518, Tariff Act of 1930" is one of more general description, in that it refers to a class of articles by composition. There is nothing in either paragraph, nor has anything outside either paragraph been called to our attention, which would indicate a legislative intent that either should prevail over competing provisions.

The long-established rule that the designation in tariff acts of an article by its name is more specific than a general description which

embraces the same article is thus set out in the case of *American Net and Twine Company* v. *Worthington*, 141 U. S. 468, 474, 35 L. ed. 821, 824:

\* \* \* it is a familiar rule in revenue cases that, where Congress has designated an article by a specific name and imposed a duty upon it, general terms in the same act, though sufficiently broad to comprehend such article, are not applicable to it; in other words, the article will be classified by its specific designation, rather than under a general description.

It therefore follows that had the merchandise been imported or withdrawn from warehouse on and after January 1, 1948, but prior to the effective date of the Presidential proclamation reported in T. D. 51898, viz, April 21, 1948, it would have been dutiable at the rate of 60 per centum ad valorem under the provision in paragraph 1518 of the Tariff Act of 1930, as unmodified, for—

\* \* \* artificial \* \* \* flowers \* \* \* when composed wholly or in chief value of other materials [than yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile].

Our next inquiry must be whether the Presidential proclamation reported in T. D. 51898 changed this situation. In part I (a) of that proclamation the President proclaimed, among other things, that, effective on and after April 21, 1948, the concessions provided for in part I of schedule XX of the General Agreement on Tariffs and Trade which were identified in the sixth recital of the said proclamation should no longer be identified in the eighth recital of the proclamation of December 16, 1947. In the list contained in the sixth recital of the proclamation, reported in T. D. 51898, the following appears:

| Item | Rates of duty |
|---|---|
| (paragraph) | |
| \*        \*        \*        \*        \*        \*        \* | |
| 1518 [fourth]_____ | 60% ad val. |
| | 45% ad val. |

The effect of this action was to remove the bar to the application of the concessions specified in the fourth concession under item or paragraph 1518 in part I of schedule XX of the General Agreement on Tariffs and Trade insofar as they applied to the merchandise therein identified with the rates of duty of 60 per centum ad valorem and 45 per centum ad valorem. As may be seen from an examination of the pertinent portions hereinabove quoted of the fourth concession under item or paragraph 1518 in part I of schedule XX of the General Agreement on Tariffs and Trade, there were three rates of duty specified therein, viz, 60 per centum ad valorem, 30 per centum ad valorem, and 45 per centum ad valorem, and certain articles were described in relation to each of the said rates of duty. The articles described in connec-

tion with the 30 per centum rate of duty were "Artificial flowers composed wholly or in chief value of feathers."

The only artificial flowers affected by the Presidential proclamation reported in T. D. 51898 were those described in connection with the rates of duty of 60 per centum and 45 per centum ad valorem, to wit: Those to which the 60 per centum rate attached, namely, artificial flowers composed wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, to which the 60 per centum rate attached, and those to which the 45 per centum rate attached, namely, artificial flowers composed wholly or in chief value of other materials and not specially provided for, *other than artificial flowers composed wholly or in chief value of feathers.* It was the obvious purpose that the proclamation published in T. D. 51898 should not affect the rate of duty applicable to artificial flowers composed wholly or in chief value of materials other than those named in connection with the 60 per centum rate and those named in connection with the 45 per centum rate, which specifically excluded artificial flowers composed wholly or in chief value of feathers. The rate of duty applicable thereto was consequently left at 60 per centum ad valorem.

This becomes crystal clear when it is noted that by a subsequent proclamation published in T. D. 51970, the President of the United States, proclaimed that, among other things, the concessions provided for in part I of schedule XX of the General Agreement on Tariffs and Trade which were identified in the sixth recital of the said proclamation should no longer be identified in the eighth recital of the proclamation of December 16, 1947, and in the list contained in the said sixth recital the following appears:

| *Item* (paragraph) | *Rates of duty* | *Date* |
|---|---|---|
| * * * | * * * * | * |
| 1518 [fourth] | 30% ad val. | July 31, 1948 |

The effect of this action was to remove on and after July 31, 1948, the bar to the application of the concession specified in the fourth concession under item or paragraph 1518 in part I of schedule XX of the General Agreement on Tariffs and Trade insofar as it applied to the merchandise therein identified with the rate of duty of 30 per centum ad valorem. This merchandise was "Artificial flowers composed wholly or in chief value of feathers." As the merchandise here involved, stipulated to be artificial flowers in chief value of feathers, was imported prior to the effective date of July 31, 1948, it must take duty at the rate of 60 per centum ad valorem under paragraph 1518, without modification, in accordance with the provisions of the Presidential proclamation issued in connection with the General

Agreement on Tariffs and Trade, T. D. 51802.   This was the rate of duty assessed.

Judgment will therefore issue overruling the protest claims.