(C. D. 1915)

VANDEGRIFT FORWARDING Co., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 25, 1957)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This case arises by way of protest against the collector's classification of so-called Arter variable speed control gears, within the provisions of paragraph 368 (a) (1) (2) of the Tariff Act of 1930, as devices for controlling the speed of arbors, drums, or disks, and his assessment of duty thereon at the rate of $4.50 each, plus 65 per centum ad valorem. The contention is made that this merchandise is dutiable at only 15 per centum ad valorem, as parts of machine tools, pursuant to the provisions of paragraph 372 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

The cited provisions, insofar as here relevant, contain the following language:

Paragraph 368:

(a) * * * and any mechanism, device, or instrument intended or suitable for measuring time, distance, speed, or fares, or the flowage of water, gas, or electricity, or similar uses, or for regulating, indicating, or controlling the speed of arbors, drums, disks, or similar uses, * * *:

(1) * * * valued at more than $10 each, $4.50 each;

(2) any of the foregoing shall be subject to an additional duty of 65 per centum ad valorem;

Paragraph 372, as modified by T. D. 51802:

| | |
|---|---|
| Machine tools (except jig-boring machine tools) | 15% ad val. |

*    *    *    *    *    *    *

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part:

*    *    *    *    *    *    *

| | |
|---|---|
| Other | The same rate of duty as the articles of which they are parts |

There is also provided in paragraph 372 of the Tariff Act of 1930, as originally enacted, the following:

* * * *Provided further*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

The record in this case is composed entirely of the deposition of Raldo E. Shipman, president of the ultimate consignee, Ralph Shipman Co., taken pursuant to 'commission issued from this court. It appears therefrom that Ralph Shipman Co. is engaged in the business of manufacturing precision metal parts and assemblies. In pursuance of those operations, the company had, sometime prior to this litigation, imported certain Ebosa chucking machines, manufactured by Ebosa S. A., Grenchen, Switzerland, and purchased from E. Luthy Co. of Le Chaux du Fond, Switzerland. As imported, the Ebosa machines were fitted with Arter variable speed control gears, specially designed for them.

Shipman, who holds a bachelor of science degree in mechanical engineering and has had 23 years with the importing company, during which time he has bought, designed, and built machinery, described the Arter variable speed control gear as the variable driving mechanism for the Ebosa turning lathe, which latter, powered by an electric motor, uses tools for turning metal. He testified that the Arter variable speed control gear is an integral part of the driving mechanism of the Ebosa chucking machine, which is essential to its operation. It is manufactured to specific dimensions and fits in a precise location in the base of the lathe. "* * * the machine is designed to use this particular variable speed drive and the available space in the machine did not permit substitution of another type drive."

As to the potential use of the Arter mechanism apart from a combination with the Ebosa turning lathe, Shipman stated:

It is possible to use the variable speed drive on other equipment. However, inasmuch as it is manufactured to metric dimensions, it would not be generally applicable without modifications of either the driving shafts or the parts which would connect with the driving shafts.

It further appears that, after a period of use, the original control gears became badly worn and could not practicably be repaired. Since it was not possible to operate the chucking machines until the worn units were replaced, the instant merchandise, duplicates of the original equipment, was ordered directly from Arter.

Predicated upon this record, plaintiff urges that the subject control gears are parts of machine tools which, under the doctrine of the cases of *Industrial Operations, Inc.* v. *United States*, 30 Cust. Ct. 82, C. D. 1500, and *National Biscuit Co.* v. *United States*, 34 Cust. Ct. 23, C. D. 1671, are more specifically provided for in paragraph 372, as modified, *supra*, than within the provisions of said paragraph 368 (a).

Citing *United States* v. *Lansen-Naeve Corp.*, 44 C. C. P. A. (Customs) 31, C. A. D. 632, defendant argues that, inasmuch as the parts provision of paragraph 372 is modified by the phrase "not specially provided for," and the merchandise at bar is "specifically and aptly" described by the terms of paragraph 368 (a), the latter provision was properly invoked by the collector. Defendant further contends that the instant record is insufficient to overcome the presumption of correctness attaching to the collector's classification in that it has not been established that the imported device is either exclusively dedicated to use, or chiefly used, as parts of machine tools, *per se.*

So far as the issues of fact in this case are concerned, it must be remembered that the only evidence of record is that of plaintiff's highly qualified witness, Shipman. His testimony about the imported articles and their eventual use stands uncontroverted and unimpeached. It shows, in the first instance, that the Ebosa chucking lathe is an electrically powered machine, using tools for turning metals. By statutory definition, *supra*, it is, therefore, a machine tool.

However, it is a machine tool which depends upon the imported mechanism for its ability to function. To quote the witness, the "variable speed drive is an integral part of the driving mechanism of the Ebosa turning lathe and when it is inoperative the turning lathe is inoperative and of no use." Although he conceded that it would be possible to use the instant control gear on other equipment, he made it clear that such alternative uses would require modifications of either the driving shafts or of the parts with which the driving shafts are connected.

It is elementary that merchandise is dutiable in its condition as imported. *United States* v. *The Winkler-Koch Engineering Co.*, 41 C. C. P. A. (Customs) 121, C. A. D. 540. In that condition, the instant speed control device, having been manufactured to precise specifications to fit and make operative a given metal turning machine, seems without doubt to be one dedicated to a particular use. This use would be that of a part of the machine for which it is designed, under the rule expressed in the case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, as follows:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673; *Peter J. Schweitzer, Inc.* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, and cases cited therein; *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T. D. 43266. [Italics quoted.]

While it has thus been established that the imported article is a part of a machine tool and, hence, described by the provisions of para-

graph 372, *supra*, nevertheless, it is not disputed that it is also a device for controlling the speed of arbors, etc., within the language used in paragraph 368, *supra*. Accordingly, it is necessary to determine which of these two provisions more specifically provides for the instant merchandise.

In principle, this question was considered in the case of *Industrial Operations, Inc.* v. *United States, supra,* involving the classification of certain speedometers for motorcycles. It was there held that the provisions of paragraph 369 (c) of the Tariff Act of 1930 for parts of motorcycles, which the court characterized as a use designation, more specifically provided for said merchandise than the provisions of paragraph 368 (a) for mechanisms intended or suitable for measuring speed, also a designation by use. In reaching that conclusion, the court stated:

All other considerations being equal, it is our opinion that the provision for "Parts * * * for motor cycles" in paragraph 369 (c) is a more specific designation than the general descriptive language of a "mechanism, device, or instrument intended or suitable for measuring * * * distance [and], speed," as provided in paragraph 368 (a), *supra.* The fact that the former provision contains the clause "not specially provided for," whereas the latter provision does not, has no effect upon our conclusion herein.

This view was, in effect, reaffirmed in the case of *National Biscuit Co.* v. *United States, supra,* in connection with an importation of variable speed units for a biscuit cutting machine, which were held to be more specifically provided for as parts of machines, not specially provided for, within paragraph 372 of the Tariff Act of 1930, as modified by prevailing trade agreement, than as devices for controlling speed in said paragraph 368 (a).

Reference might also well be made to the case of *United States* v. *Herman H. Sticht & Co.,* 22 C. C. P. A. (Customs) 40, T. D. 47048, holding the provisions of paragraph 353 of the present law for parts, not specially provided for, of electrical telegraph and radio instruments to be more specific than the provision for devices for indicating the speed of arbors, etc. It was there stated:

It is true, as pointed out by the Government, that paragraph 353 contains the clause "not specially provided for", while paragraph 368 does not. However, it is well settled by this court that if an article is more specifically described in a paragraph containing the "not specially provided for" clause than in a paragraph not containing such clause, the presence of the clause in the one paragraph will not have the effect of excluding the article from the paragraph where it is more specifically provided for. *Knauth, Nachod & Kuhne* v. *United States,* 4 Ct. Cust. Appls. 58, T. D. 33307; *Loewenthal & Co.* v. *United States,* 6 Ct. Cust. Appls. 209, T. D. 35464; *Comstock & Theakston* v. *United States,* 12 Ct. Cust. Appls. 502, T. D. 40698.

The recent case of *United States* v. *Lansen-Naeve Corp., supra,* relied upon by defendant herein, does not disturb this principle. That case stands for theproposition thatn where a use provision is qualified by

the phrase "not specially provided for" it is subordinate to a descriptive or *eo nomine* provision, but only where the latter "aptly and specifically name[s] or describe[s] the goods in question. * * * That is to say, the goods must actually be *specially* provided for." [Italics quoted.] Where, however, a descriptive provision merely includes an article within its general terms, a designation by use, even though limited to articles, not specially provided for, would be controlling.

That the language of paragraph 368, *supra,* is "general, rather than narrow and specific" and thus excluded from the rule of the *Lansen-Naeve* case, *supra,* the court itself expressly acknowledged, and, in so doing, impliedly affirmed our decision in *Industrial Operations, Inc.* v. *United States, supra.*

Under the foregoing circumstances, we find and hold that the imported articles, being parts of machine tools, are more specifically provided for in said paragraph 372, as modified, *supra,* and, hence, are dutiable at the rate of 15 per centum ad valorem, than within said paragraph 368 (a) as devices for controlling the speed of arbors, etc. The claim of the plaintiff to that effect is sustained.

Judgment will be entered accordingly.